# In re Antonio ESPOSITO, Respondent

## File A30 619 479 - New York

### *Decided March 30, 1995*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) For purposes of section 212(a)(10) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(10) (1988), and its successor provision at section 212(a)(2)(B) of the Act, 8 U.S.C. § 1182(a)(2)(B) (Supp. V 1993), a sentence is "actually imposed" where a criminal court suspends the execution of a sentence, but no sentence is "actually imposed" where the imposition of sentence is suspended. *Matter of Castro,* 19 I&N Dec. 692 (1988), followed.

(2) Section 212(c) of the Act is ineffective to waive deportability under former section 241(a)(14) of the Act, 8 U.S.C. § 1251(a)(14) (1988), or section 241(a)(2)(C) of the Act, 8 U.S.C. § 1251(a)(2)(C) (Supp. V 1993), for conviction of a firearms violation, even where the firearms violation is one of two or more crimes which may render the alien inadmissible under section 212(a)(10) [now section 212(a)(2)(B)] of the Act. *Matter of Montenegro,* 20 I&N Dec. 603 (BIA 1992); *Matter of Hernandez-Casillas,* 20 I&N Dec. 262 (BIA 1990; A.G. 1991), *aff'd*, 983 F.2d 231 (5th Cir. 1993); and *Matter of Wadud*, 19 I&N Dec. 182 (BIA 1984), followed.

FOR RESPONDENT: Michael P. DiRaimondo, Esquire, New York City

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Janice B. Podolny, Appellate Counsel, and James A. O'Brien III, General Attorney

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA and HEILMAN, Board Members; HOLMES, Alternate Board Member

HEILMAN, Board Member:

In a decision dated May 12, 1992, this Board dismissed the respondent's appeal from the Immigration Judge's denial of his motion to reopen deportation proceedings. We found that the respondent had failed to establish that he was prejudiced by the actions of his former counsel, and that the Immigration Judge had correctly determined that the respondent was ineligible for relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (Supp. IV 1992). The respondent petitioned for review of our decision in the United States Court of Appeals for the Second Circuit. In *Esposito v. INS,* 987 F.2d 108 (2d Cir. 1993), the court vacated our

May 12, 1992, decision and remanded this matter to us. The appeal will be dismissed.

## I. THE TWO ISSUES ON REMAND FROM THE CIRCUIT COURT

The matter was remanded to us to determine two issues with respect to the respondent's request for relief under section 212(c) of the Act:

> (1) [W]hether the aggregate suspended sentences of five years or more to which Esposito was subjected were "actually imposed" within the meaning of [8 U.S.C.] § 1182(a)(2)(B), with the result that § 1182(a)(2)(B) applies to Esposito's situation; and if so, (2) whether an immigrant who has a conviction for weapons possession that would be a constituent of a § 1182(a)(2)(B) violation, thus providing a ground for exclusion subject to *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976)] discretionary relief, is nonetheless ineligible for such relief because that conviction standing alone also provides a ground for deportation under [8 U.S.C.] § 1251(a)(2)(C) that has no counterpart in § 1182.

*Esposito v. INS, supra*, at 112.[1]

## II. ISSUE ONE: THE AGGREGATE SENTENCES "ACTUALLY IMPOSED"

On April 16, 1986, the respondent was convicted in the Circuit Court of Virginia Beach, Virginia, of the following offenses: possession of marihuana in violation of section 18.2-250.1 of the Virginia State Code; possession of cocaine with intent to distribute in violation of section 18.2-248 of the Virginia State Code; and possession of a sawed-off shotgun in violation of section 18.2-300(b) of the Virginia State Code. On the marihuana violation the court sentenced the respondent to confinement for 12 months, then suspended the execution of the sentence conditioned on the respondent's good behavior for a period of 20 years plus payment of court costs. For the cocaine possession the respondent was sentenced to confinement for 20 years and fined $10,000, then execution of the sentence to confinement was suspended conditioned on the respondent's good behavior for 20 years, service of 12

---

[1] The grounds of exclusion and deportation were revised by the Immigration Act of 1990, Pub. L. No. 101-649, §§ 601, 602, 104 Stat. 4978, 5067-82 (enacted Nov. 29, 1990). The circuit court has framed the issues on remand using the 1990 revised grounds. The revisions, however, do "not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991." Immigration Act of 1990, § 602(d), 104 Stat. at 5082; *cf. Matter of Papazyan*, 20 I&N Dec. 568 (BIA 1992). Since the Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien in this case was served on the respondent in June 1987, the revisions do not apply. The ground of exclusion at section 212(a)(2)(B)of the Act, 8 U.S.C. § 1182(a)(2)(B) (Supp. V 1993), cited by the court in the quoted text, corresponds to former section 212(a)(10) of the Act, 8 U.S.C. § 1182(a)(10) (1988). *See* Immigration Act of 1990, § 601, 104 Stat. at 5068. The charge of deportation at section 241(a)(2)(C) of the Act, 8 U.S.C. § 1251(a)(2)(C) (Supp. V 1993), cited by the court in the quoted text, corresponds to former section 241(a)(14) of the Act, 8 U.S.C. § 1251(a)(14) (1988). *See* Immigration Act of 1990, § 602, 104 Stat. at 5080.

months in the city jail, and payment of court costs. Finally, with respect to his conviction for unlawful possession of a sawed-off shotgun, the court sentenced the respondent to 5 years' imprisonment and suspended execution of the sentence conditioned on the respondent's good behavior for 20 years and payment of court costs.

## A. Case Precedent Defining the Term "Actually Imposed"

This Board has not issued a precedent decision addressing whether a sentence to confinement, the execution of which is subsequently suspended, is a "sentence[] to confinement actually imposed" within the meaning of section 212(a)(10) of the Act, 8 U.S.C. § 1182(a)(10) (1988), or its successor section at 212(a)(2)(B) of the Act, 8 U.S.C. § 1182(a)(2)(B) (Supp. V 1993). We have, however, as noted by the circuit court, specifically addressed whether a sentence to confinement, the execution of which is subsequently suspended, is a "sentence actually imposed" for purposes of former section 212(a)(9) of the Act.[2]

In *Matter of Castro*, 19 I&N Dec. 692 (BIA 1988), this Board found that when a court imposes a sentence but suspends execution of that sentence, the sentence is "actually imposed" for purposes of section 212(a)(9) of the Act even though probation may also be granted. *Id.* at 695. In contrast, when a court suspends the imposition of the sentence, there is no "sentence actually imposed." *Id.* at 694. The phrases "sentence actually imposed" in section 212(a)(9) and "sentences to confinement actually imposed" in section 212(a)(10) appeared in the Act, at the same time, in successive paragraphs, and relate to the same object and subject matter. We find that they must be interpreted consistently. 2A N. Singer, *Sutherland Statutory Construction,* § 51.03 (4th ed. 1985). We note that the reasoning in *Matter of Castro, supra*, has been upheld for purposes of section 212(a)(9), *see Solis-Muela v. INS,* 13 F.3d 372 (10th Cir. 1993),[3] and followed in interpreting the "actually imposed" requirement of section 212(a)(10), *see Fonseca-Leite v. INS,* 961

---

[2] Former section 212(a)(9) of the Act was revised and redesignated as sections 212(a)(2)(A)(i)(I) and (II) of the Act by section 601 of the Immigration Act of 1990, 104 Stat. at 5067-68.

[3] Mr. Solis-Muela had been convicted in a Wyoming court of disposing of stolen property. *Solis-Muela v. INS, supra,* at 375. The court sentenced him to between 1 and 5 years of imprisonment, but then suspended execution of all but 1 year of the sentence. *Id.* The Board determined that the "sentence actually imposed," for purposes of the petty offense exception in section 212(a)(9) of the Act, was between 1 and 5 years of imprisonment such that the alien did not qualify for the exception. *Id.* In agreeing with the Board, the Court of Appeals for the Tenth Circuit stated:

We cannot say that the BIA's interpretation is anything other than sensible and reasonable. It followed its earlier decision, Matter of Castro, 1988 WL 235473, 1988 BIA LEXIS 32, 19 I&N Dec. 692 (BIA 1988), in which the BIA reasoned that "when imposition of the sentence is suspended, no sentence has been actually imposed," whereas "where the execution of the sentence is suspended, a sentence has actually been imposed, even though

F.2d 60 (5th Cir. 1992).[4] Moreover, as no substantive change was made in revising and redesignating section 212(a)(10) as section 212(a)(2)(B), we find that the interpretation in *Castro* is equally applicable to section 212(a)(2)(B). *See Rodrigues v. INS*, 994 F.2d 32 (1st Cir. 1993) (discussing that *Castro* reasoning "might prove determinative" in interpreting section 212(a)(2)(B), but that case at bar ultimately hinged on interpretation of sentencing order).

## B. The State Department Regulation at 22 C.F.R. § 40.22(b)

The State Department provision at 22 C.F.R. § 40.22(b) mentioned by the circuit court in *Esposito v. INS, supra,* at 112, is not necessarily to the contrary. That provision states that a "sentence to confinement that has been suspended by a court of competent jurisdiction is not one which has been 'actually imposed' within the meaning of [section] 212(a)(2)(B)." 22 C.F.R. § 40.22(b) (1994). Neither the regulation nor the interpretive notes found at Vol. 9, Foreign Affairs Manual, Part I, 22 C.F.R. § 40.22 note 1.2 (TL:VISA-46 Aug. 26, 1991), indicate whether the suspension referred to is suspension of the "imposition" or the "execution" of the sentence.

If suspension of the imposition of sentence is referred to, then the regulation is not at all inconsistent with *Matter of Castro, supra.* The parties have presented no cases addressing 22 C.F.R. § 40.22(b), and we are aware of none. In such a vacuum we decline to interpret 22 C.F.R. § 40.22(b) as applying to suspension of the execution of sentence, an interpretation which would

---

probation may also be granted." 1988 WL 235473, 1988 BIA LEXIS 32 at *6-7 (emphasis added). *Id.*

[4] The decision of the Fifth Circuit relates the following facts and conclusions relevant to our discussion:

Fonseca-Leite is a native and citizen of Brazil who has resided in the United States since 1967, last entering this country as a visitor in 1974. In July 1988 he was convicted of possession of a firearm without a serial number and possession of an unregistered firearm. He was sentenced to three years imprisonment on each count, with sentences to run consecutively. The sentence on the second count was suspended. He was incarcerated 24 months and 20 days in federal prison on the first count. . . .

. . . .

Fonseca-Leite maintains that the Board erred in applying the prohibition of 8 U.S.C. § 1182(a)(10) against him because he was not subjected to a prison sentence in excess of five years on his two offenses. He points to the fact that he was confined for just over two years. Fonseca misperceives the law. The actual time spent in confinement is irrelevant. He was sentenced to two consecutive three-year periods of confinement. Six years was "the aggregate sentences to confinement actually imposed." 8 U.S.C. § 1182(a)(10). That a portion of the six years was suspended does not change that essential and basic fact. *Matter of Castro,* 19 I&N Dec. 692 (BIA 1988). The BIA did not err in holding that Fonseca-Leite is ineligible for admission into the United States.

*Fonseca-Leite v. INS, supra,* at 61-62.

put the regulation at odds with a substantial body of contrary caselaw, including our own. *See Rodrigues v. INS, supra*, at 34.

Furthermore, even assuming the State Department regulation evidenced a clear conflict with the position we have taken, we note that this Board, as the Attorney General's delegate, is charged by law with interpreting questions of law within our jurisdiction under the Act and, in this instance, for the reasons stated, we would depart from the State Department regulation:

> The Attorney General shall be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens, except insofar as this Act or such laws relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: *Provided, however,* That determination and ruling by the Attorney General with respect to all questions of law shall be controlling.

Section 103(a) of the Act, 8 U.S.C. § 1103(a) (1988); *see also* 8 C.F.R. § 3.1 (1994).

## C. Conclusion

In response, then, to the first issue on remand, we find that even though the execution of the sentence to confinement was suspended on each of the respondent's convictions, the "aggregate sentences to confinement actually imposed" on the respondent within the meaning of section 212(a)(10) [now 212(a)(2)(B)] of the Act were: 12 months for the respondent's marihuana violation, plus 20 years for the respondent's cocaine violation, plus 5 years for the respondent's firearms violation, for a total of 26 years. *Matter of Castro, supra; see also Solis-Muela v. INS, supra; Rodrigues v. INS, supra; Fonseca-Leite v. INS, supra.* The respondent therefore could be deemed inadmissible within the meaning of section 212(a)(10) [now 212(a)(2)(B)] of the Act, with one of the constituent convictions being his firearms violation.

## III. ISSUE TWO: STATUTORY ELIGIBILITY FOR SECTION 212(c) RELIEF

Section 212(c) of the Act provides, in pertinent part, that aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds of exclusion. In 1976, the availability of section 212(c) relief was significantly expanded when the United States Court of Appeals for the Second Circuit held that a section 212(c) waiver should be available regardless of whether the applicant had departed from the United States subsequent to the acts which rendered him deportable. *Francis v. INS,* 532 F.2d 268 (2d Cir. 1976). The court held that "[f]undamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors,

be treated in a like manner." *Id.* at 273. This Board decided shortly thereafter to adopt the approach of the Second Circuit nationwide. *Matter of Silva,* 16 I&N Dec. 26 (BIA 1976).

In *Matter of Granados,* 16 I&N Dec. 726, 728 (BIA 1979), *aff'd,* 624 F.2d 191 (9th Cir. 1980), this Board indicated that *Francis* and *Silva* represented the limit of our expansion of section 212(c) to deportation cases and stated that because section 212(c), by its terms, permits the Attorney General to waive only particular grounds for exclusion, this section may not be used to obtain discretionary relief from a ground of deportation which is not also a ground of exclusion listed under section 212(a). The constitutional soundness of our position in *Granados* was confirmed by the Ninth Circuit in *Cabasug v. INS*, 847 F.2d 1321 (9th Cir. 1988), which held that section 212(c) relief was unavailable to an alien where the particular ground for deportation, conviction for a firearms offense, had no counterpart among the grounds for exclusion.[5]

## A. Matter of Hernandez-Casillas Reaffirmed the "Comparable Ground" Analysis

In January 1990 this Board revisited the history and application of section 212(c) in deportation proceedings in *Matter of Hernandez-Casillas,* 20 I&N Dec. 262 (BIA 1990). We recognized that the limitation represented in *Matter of Granados, supra,* could result in the total unavailability of relief from deportation for longtime resident aliens who are deportable based on certain offenses which are not nearly as serious as those of other aliens who are eligible for the section 212(c) waiver. *Matter of Hernandez-Casillas, supra,* at 264-65. In an effort to remedy this anomalous situation, we departed from *Granados* and held that a waiver under section 212(c) of the Act would be available to aliens deportable under any ground of deportation except those where there is a comparable ground of exclusion which has been specifically exempted from section 212(c). *Matter of Hernandez-Casillas, supra,* at

---

[5] The Ninth Circuit decided to follow *Francis* in *Tapia-Acuna v. INS,* 640 F.2d 223 (9th Cir. 1981). In *Cabasug*, the court quoted its holding in *Tapia-Acuna*, and then distinguished it based on the ground of deportation at issue as follows:

Specifically referring to subsection 11 [of 8 U.S.C. § 1251(a)], the provision relating to narcotic drugs and marijuana, we said [in *Tapia-Acuna*]:

Consequently, we hold that eligibility for § 1182(c) relief cannot constitutionally be denied to an otherwise eligible alien who is deportable under § 1251(a)(11), whether or not the alien has departed from and returned to the United States after the conviction giving rise to deportability.

[*Tapia-Acuna v. INS, supra,* at 225]. The language in the statute providing for exclusion of aliens convicted of marijuana possession was substantially identical to the statutory language providing for deportation. In contrast, the deportation ground involved here, possession of a sawed-off shotgun or machine gun, has no counterpart in the exclusion statute.

*Cabasug v. INS,* supra, at 1325.

264-65. Our decision was referred to the Attorney General for review under 8 C.F.R. § 3.1(h).

On review of *Hernandez-Casillas,* the Attorney General disapproved of the Board's departure from *Granados* and specifically reaffirmed the holding in *Granados* that a section 212(c) waiver is available in deportation proceedings only to those aliens who have been found deportable under a charge of deportability for which there is a comparable ground of excludability. *Matter of Hernandez-Casillas,* 20 I&N Dec. 262, 288 (BIA 1990; A.G. 1991), *aff'd*, 983 F.2d 231 (5th Cir. 1993). This Board and all Immigration Judges are strictly bound by the determinations of the Attorney General, and we will apply the Attorney General's decision in *Hernandez-Casillas* in this case. *See* 8 C.F.R. §§ 3.0 - 3.1(d) (1994); *Matter of Montenegro,* 20 I&N Dec. 603, 604 (BIA 1992).

## B. Section 212(c) of the Act Waives Grounds of Exclusion or Deportation, not the Underlying Offenses

In *Esposito v. INS, supra,* the court described the Attorney General's decision in *Matter of Hernandez-Casillas, supra,* as follows: "In *Hernandez-Casillas,* the Attorney General held that his *Francis*-mandated discretion extends only to aliens convicted of crimes that are grounds for deportation and, like the marihuana offense in *Francis,* have counterparts in § 1182, the exclusion section of the Immigration and Nationality Act." *Esposito v. INS, supra*, at 111. We do not perceive this to be an entirely accurate statement. It is important to recognize that the relief provided by section 212(c) is the waiver of a particular *ground* of exclusion or deportation, not a waiver of the particular offense which forms the basis for that ground of exclusion or deportation. The focus under *Hernandez-Casillas* and *Granados* is not whether the deportable alien's particular offense, in this case a firearms violation, could form the basis for a ground of exclusion and therefore be waivable; rather, the focus is whether the ground of deportation against the alien has a comparable ground of exclusion.

This focus on the grounds of deportation and exclusion, as opposed to their underlying offenses, is readily apparent in the Attorney General's decision in *Hernandez-Casillas.* On page 286-87 of *Hernandez-Casillas* the Attorney General states: "I conclude that the Board erred in holding that relief under section 212(c) may be afforded for grounds for deportation that are not grounds for exclusion made waivable by the terms of section 212(c)." In reaching this conclusion the Attorney General referred to the Board's decision in *Matter of Silva, supra,* stating:

> Under *Silva* . . . the Attorney General may not waive a ground for deportation if it is not a ground for exclusion at all or if it is a ground for exclusion placed beyond the Attorney General's discretionary powers by the terms of section 212(c). In contrast, under the Board's holding in this case, only the latter limitation would remain. The Board's approach thus

would take immigration practice even further from the statutory text, which refers only to grounds for exclusion.

*Matter of Hernandez-Casillas, supra,* at 287.

Likewise, in determining that the Board's holding in *Hernandez-Casillas* was not mandated by equal protection principles, the Attorney General maintained the emphasis on the grounds of deportation and exclusion themselves, and not on their underlying offenses. "[T]he Second Circuit in *Francis* and the Board in *Silva*, by concluding that equal protection principles require deviation from the literal terms of section 212(c), kept such deviations to what they understood as the constitutionally mandated minimum; that is, *Francis* and *Silva* require only that discretionary relief under section 212(c) be made available in deportation proceedings in which the asserted ground for deportation is also a ground for exclusion expressly subject to waiver under that section." *Matter of Hernandez-Casillas, supra,* at 288.

Thus, it is not relevant under *Hernandez-Casillas* and *Granados* that the respondent's firearms offense could form a constituent element of inadmissibility under section 212(a)(10) of the Act as discussed above. He is ineligible for relief under section 212(c) of the Act because the ground of deportation under which he has been found deportable—section 212(a)(14) [now section 241(a)(2)(C)] of the Act—does not itself have a comparable ground of exclusion. *Matter of Hernandez-Casillas, supra; Matter of Granados, supra.* In other words, the respondent's firearms conviction standing alone supports a charge of deportation under section 241(a)(14) [now 241(a)(2)(C)] of the Act, the respondent has in fact been found deportable based on this charge, and section 212(c) cannot waive a charge of deportability under section 241(a)(14) because there is no counterpart among the grounds of inadmissibility in section 212(a). *Matter of Hernandez-Casillas, supra; Matter of Granados, supra.*

## C. Ineligibility for Section 212(c) Relief Due to Lack of a Comparable Exclusion Ground is not Cured Even Though the Alien's Offense May Support Some Ground of Excludability

In applying the precedent represented in *Granados* and *Hernandez-Casillas* we have previously addressed and rejected similar efforts to establish eligibility for section 212(c) relief in deportation proceedings, notwithstanding the lack of an exclusion ground comparable to the ground of deportation, by subsuming the respondent's conduct or offense under some exclusion ground. *Matter of Montenegro, supra; Matter of Wadud*, 19 I&N Dec. 182 (BIA 1984).

In *Wadud* the respondent was charged with and found deportable under former section 241(a)(5) of the Act, which had no comparable ground among the section 212(a) grounds specified in section 212(c). The respondent argued, however, that because his conviction involved moral turpitude, he

would come within the scope of section 212(a)(9) were he to apply for admission to this country, and that he should therefore be considered eligible for section 212(c) relief. *Matter of Wadud, supra,* at 185. Upon considering the respondent's position, the Board specifically "decline[d] to expand the scope of section 212(c) relief in cases where the ground of deportability charged is not also a ground of inadmissibility." *Id.*

In *Montenegro* the respondent argued that his conviction for assault with a firearm, for which he was found deportable under section 241(a)(2)(C) of the Act, would also render him excludable under section 212(a)(2)(A)(i)(I) of the Act (previously 212(a)(9)), for having been convicted of a crime involving moral turpitude, and that section 212(a)(2)(A)(i)(I) of the Act should therefore be considered a comparable ground of exclusion for purposes of section 212(c) eligibility. Following *Matter of Wadud, supra,* the Board denied the respondent's claim, finding again that section 212(c) could not waive the charge of deportability under section 241(a)(2)(C) because section 241(a)(2)(C) has no analogous ground of inadmissibility. *Matter of Montenegro, supra,* at 604-05 (stating that the respondent's argument "relative to crimes involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act must be rejected; section 212(c) cannot waive the charge of deportability under section 241(a)(2)(C) in the instant case because section 241(a)(2)(C) has no analogous ground of inadmissibility").

Although the respondent's case offers a different ground of exclusion, his claim is fundamentally the same as those addressed and rejected in *Matter of Wadud* and *Matter of Montenegro* and must be answered in the same way. While the respondent could be deemed inadmissible within the meaning of section 212(a)(10) [now 212(a)(2)(B)] of the Act based in part on his firearms violation, this does not make him eligible for section 212(c) relief. The respondent's firearms conviction standing alone supports a charge of deportation under section 241(a)(14) [now 241(a)(2)(C)], the respondent has in fact been found deportable based on this charge, and section 212(c) cannot waive a charge of deportability under section 241(a)(14) because there is no counterpart among the grounds of inadmissibility in section 212(a). *Matter of Montenegro, supra; Matter of Wadud, supra; see also Komarenko v. INS,* 35 F.3d 432 (9th Cir. 1994) (holding that alien was not denied equal protection when eligibility for section 212(c) relief was denied on grounds that firearms deportation charge and moral turpitude exclusion ground were not substantially identical).

As further discussed in *Matter of Montenegro, supra,* this Board's decision in *Matter of Meza,* 20 I&N Dec. 257 (BIA 1991), is limited to the question of eligibility for section 212(c) relief in the case of a conviction for a drug-trafficking aggravated felony and is based on the specific amendment to section 212(c) regarding aggravated felonies. *Meza* does not alter the general rule that section 212(c) relief is available in deportation proceedings only to those aliens who have been found deportable under a ground of deportability

for which there is a comparable ground of excludability. *Matter of Chow,* 20 I&N Dec. 647 (BIA 1993), *aff'd,* 9 F.3d 1547 (5th Cir. 1993); *Matter of Montenegro, supra; Matter of Hernandez-Casillas, supra.*

### D.  No Circuit Court Has Found That Section 212(c) Waives the Deportation Ground Based on Firearms Offenses

Finally, we note that since the Attorney General's decision in *Matter of Hernandez-Casillas, supra,* no court which has addressed the issue has held that a section 212(c) waiver is available to waive deportability on the ground of a firearms offense. *See Gjonaj v. INS,* 47 F.3d 824, (6th Cir. 1995); *Komarenko v. INS, supra; Rodriguez-Padron v. INS,* 13 F.3d 1455 (11th Cir. 1994); *Kin Sang Chow v. INS*, 12 F.3d 34 (5th Cir. 1993); *Rodriguez v. INS,* 9 F.3d 408 (5th Cir. 1993); *Campos v. INS,* 961 F.2d 309 (1st Cir. 1992); *cf. Leal-Rodriguez v. INS,* 990 F.2d 939 (7th Cir. 1993) (entry without inspection); *Cabasug v. INS, supra* (decided prior to *Hernandez-Casillas, supra*; firearms violation).

Accordingly, we find that the respondent is ineligible for relief under section 212(c) of the Act because he has been found deportable under a ground of deportation which does not itself have a comparable ground of exclusion. *Matter of Hernandez-Casillas, supra; Matter of Granados, supra.*

### E.  Bedoya-Valencia v. INS Does not Provide Basis for Section 212(c) Relief on Weapons Charge

We have also considered the decision of the Second Circuit in *Bedoya-Valencia v. INS*, 6 F.3d 891 (2d Cir. 1993), and conclude that it does not provide authority to find an alien eligible for section 212(c) relief in spite of his deportability for a weapons conviction. In *Bedoya-Valencia* the Second Circuit stated that three of the current grounds of deportation fail to satisfy the requirement of having substantially equivalent grounds of exclusion: entry without inspection under section 241(a)(1)(B), conviction of a firearms violation under section 241(a)(2)(C), and willful failure to notify the Attorney General of a change of address under section 241(a)(3)(A). The court noted that both entry without inspection and willful failure to notify the Attorney General of the alien's change of address are grounds for deportation which, as a matter of logic, cannot be grounds for exclusion. The court then stated as follows:

> Absent any Congressional indication to the contrary, we believe that coherence and consistency are promoted by allowing the exercise of § 1182(c) discretion with respect to the deportation ground of entry without inspection. . . At least with respect to entry without inspection, a ground of deportation that could not conceivably have such an analogue [in the exclusion grounds], there is no basis in statutory text or legislative purpose to preclude the modest extension of the *Francis* rule that Bedoya-Valencia seeks on this appeal.

*Bedoya-Valencia v. INS, supra*, at 897.

The court later stressed that "we undertake only to achieve coherence regarding the impact of our prior ruling in *Francis* upon a ground of deportation that, by logical necessity, can have no counterpart ground of exclusion." *Id.* at 898. Accordingly, the court held that an alien deportable for entry without inspection may be eligible for section 212(c) relief, and it suggested that an alien deportable for willful failure to notify the Attorney General of the alien's change of address may likewise be eligible for section 212(c) relief.

In contrast, the ground of deportation based on firearms violations could be specified as a ground for exclusion if Congress so chose, but it has not done so. *See Rodriguez-Padron v. INS, supra,* at 1460; *Cabasug v. INS, supra,* at 1326. The Ninth Circuit stated in *Cabasug v. INS, supra,* as follows:

> [T]here exists no class of persons alike in carrying [the prohibited types of firearms], and deportable or not depending on the irrelevant circumstance of whether at some previous time they took a temporary trip out of the country. The gravamen of the equal protection violation identified in *Francis* was just such a distinction without a material difference. In the treatment of these weapons offenses, Congress has legislated no such distinction, nor has any administrative practice created one.

*Id.* at 1326.

In sum, the Second Circuit in *Bedoya-Valencia v. INS, supra,* placed great emphasis on the fact that entry without inspection was "a ground of deportation that could not conceivably have such an analogue" in the exclusion grounds. *Id.* at 897. A similar conclusion cannot follow in the present case, where firearms violations logically could form the basis of an exclusion ground. We therefore do not find *Bedoya-Valencia* controlling in the present case.

## IV. SUMMARY

Three convictions were alleged against the respondent in the Order to Show Cause. Two convictions involved controlled substances, and the third was for unlawful possession of a sawed-off shotgun. On each of the three convictions, the respondent was sentenced to confinement, and then the execution of the sentence to confinement was suspended. In answer to the first issue presented by the circuit court on remand, we find that a sentence to confinement, the execution of which is subsequently suspended, is a sentence to confinement "actually imposed" within the meaning of section 212(a)(10) of the Act, and its successor provision at section 212(a)(2)(B) of the Act. *Matter of Castro, supra.* As the aggregate sentences "actually imposed" against the respondent totalled 5 years or more, he could be deemed inadmissible within the meaning of section 212(a)(10) [now 212(a)(2)(B)] of the Act, with one of the constituent convictions being his firearms violation.

However, with respect to the second issue on remand, a finding that the respondent is subject to inadmissibility under section 212(a)(10) [now 212(a)(2)(B)] of the Act, based in part on his firearms offense, does not

establish a basis for finding him eligible for relief under section 212(c) of the Act. The operation of section 212(c) of the Act waives grounds of exclusion or deportation, not the underlying offenses of those grounds. In deportation proceedings, pursuant to the Attorney General's decision in *Matter of Hernandez-Casillas, supra,* by which this Board is bound, section 212(c) cannot waive a ground of deportation which does not have an analogous ground of exclusion. It is not relevant under *Hernandez-Casillas* that the respondent's firearms offense could support both an exclusion ground and a deportation ground. Rather, the respondent has been found deportable under section 241(a)(14) [now 241(a)(2)(C)] of the Act, and because this ground of deportation has no corresponding ground of exclusion, the respondent is not eligible for relief under section 212(c) of the Act. *See also Matter of Montenegro, supra; Matter of Wadud, supra.*

As noted, since the Attorney General's decision in *Matter of Hernandez-Casillas, supra,* no court which has addressed the issue has held that a section 212(c) waiver is available to waive deportability on the ground of a firearms offense. We find that the decision of the circuit court in *Bedoya-Valencia v. INS, supra*, is not controlling for the reasons stated above.

We therefore uphold the decision of the Immigration Judge that the respondent's deportability under section 241(a)(14) [now 241(a)(2)(C)] of the Act, for which there is no analogous ground of exclusion, renders the respondent ineligible for a section 212(c) waiver. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.